UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

LAURI GORDON,

     Plaintiff,

        vs.

BANK OF AMERICA, N.A.;
SETERUS, INC.; FEDERAL
NATIONAL MORTGAGE
ASSOCIATON; JOHN DOES I-X,

     Defendants.

Civil Action No.

**COMPLAINT AND JURY DEMAND**

     Lauri Gordon, of full age, hereby complains of Defendants as follows:

## JURISDICTION AND VENUE

**1.** Jurisdiction is appropriately laid in the United States District Court, District of New Jersey pursuant to 28 U.S.C. §1331 as the claim in question is based upon a federal statute and Federal Question Jurisdiction.

**2.** Venue is appropriately laid in the District Court of New Jersey pursuant to 28 U.S.C. §1391(b)(2) as the events giving rise to the claim occurred substantially within the State of New Jersey.

## PARTIES

**3.** Plaintiff Lauri Gordon owns and resides in the real property located at 278 Morse Avenue, Wyckoff, New Jersey.

1

**4.** Defendant Bank of America, N.A. previously serviced the mortgage loan that is the subject of this litigation. Bank of America, N.A. ("BANA") regularly conducts business in New Jersey and maintains its headquarters at 100 N Tryon Street #170, Charlotte, North Carolina.

**5.** Defendant Seterus, Inc. presently services the mortgage loan that is the subject of this litigation. Seterus, Inc. ("Seterus") maintains its principal location of business in North Carolina and maintains an agent for service of process in New Jersey at The Corporation Trust Company 820 Bear Tavern Road, West Trenton, New Jersey 08628.

**6.** Federal National Mortgage Association ("Fannie Mae") is the owner of the mortgage loan that is the subject of this litigation. Fannie Mae maintains its principal place of business at 3900 Wisconsin Avenue NW, Washington, D.C.

### Facts Common to All Counts

**7.** In February, 2007, Plaintiff Lauri Gordon entered into a refinance mortgage loan agreement with Premier Bank whereby a promissory note and mortgage were executed by Plaintiff in favor of Premier Bank.

**8.** After the loan closed, servicing was transferred to Countrywide Home Loans.

**9.** After the loan closed it was sold to Fannie Mae.

**10.** In 2008 Countrywide Home Loans was acquired by and became part of Bank of America, N.A. and BANA became the servicer of Plaintiff's mortgage loan.

**11.** BANA serviced the mortgage loan on behalf of owner Fannie Mae.

**12.** Due to unforeseen economic circumstances, Plaintiff incurred an economic hardship in early 2009.

**13.** Despite suffering the economic hardship, Plaintiff did not default on the mortgage loan.  Instead, Plaintiff sold personal belongings and used her retirement savings to continue paying the regular principal and interest loan payments of $2,248.31.

**14.** While liquidating her retirement savings to pay the mortgage loan, Plaintiff began proactively contacting BOA to seek loss mitigation assistance.

**15.** In or about September, 2009, an employee representative of BANA told Plaintiff by phone that loss mitigation options would be available to Plaintiff only if she first defaulted on the mortgage loan for a minimum of three consecutive months.

**16.** Plaintiff relied upon the instructions of the BANA employee representative and defaulted on the mortgage loan in order to become eligible for loss mitigation options.

**17.** Following the instruction of the BANA employee representative, Plaintiff did not make the mortgage loan payment due October 1, 2009, November 1, 2009 and December 1, 2009.

**18.** Simultaneous to the default, in late 2009, Plaintiff submitted a complete loss mitigation application to BANA.

**19.** In or about the beginning December, 2009, an employee representative of BANA contacted Plaintiff by phone and advised that loss mitigation opportunities in the form of a modification of the loan were available.

**20.** The BANA employee representative told Plaintiff that as a condition of eligibility for the loan modification, Plaintiff was required to make a one-time payment of $2,956.10 as consideration for review of the loss mitigation application.

**21.** Acting in reliance on the instruction of the BANA representative, on or about December 4, 2009, Ms. Gordon obtained a cashier's check from TD Bank in the amount of $2,956.10 payable to "BAC Home Loans Servicing LP" and sent the check to BANA.   A copy of the check is hereto attached as **Exhibit 1.**

    a.   BAC Home Loans Servicing LP is or was a subsidiary of BANA.

**22.** On or about December 18, 2009, Plaintiff received a phone call from an employee representative of BANA confirming Plaintiff had been approved for a trial loan modification.

    a.   The BANA employee further explained the trial loan modification plan would require Plaintiff to make three

monthly payments in the amount of $1,614.17 starting on February 1, 2010.

23. During the December 18, 2009 phone call with Plaintiff, the BANA employee representative falsely claimed that BANA had not received Plaintiff's December 4, 2009 cashier's check in the amount of $2,956.10. BANA demanded that Plaintiff send a second check in the amount of $2,956.10 to be eligible for the loan trial modification plan.

24. Acting in reliance on the representation that BANA did not receive Plaintiff's December 4, 2009 cashier's check, Plaintiff obtained a subsequent cashier's check dated December 21, 2009 in the amount of $2,956.10 payable to "BAC Home Loan Service LP." A copy of the December 21, 2009 check is hereto attached as **Exhibit 2**.

25. Despite claiming not to have received Plaintiff's December 4, 2009 cashier's check, BANA deposited both the December 4, 2009 check **and** the December 21, 2009 check.

26. In late December 2009, BANA provided Ms. Gordon a written "HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN" ("Trial Modification Agreement"). A copy of the Trial Modification Agreement is hereto attached as **Exhibit 3**.

27. The Trial Modification Agreement memorialized certain representations made by the BANA representatives earlier in December 2009.

**28.**  In   relevant   part,   the   Trial   Modification   Agreement
provided:

> If I am in compliance with this Trial Period Plan
> (the "Plan") and my representations in Section 1
> continue to be true in all material respects,
> then the Servicer will provide me with a Home
> Affordable Modification Agreement ("Modification
> Agreement"), as set forth in Section 3, that
> would amend and supplement (1) the Mortgage on
> the Property, and (2) the Note secured by the
> mortgage.
> . . .
>
> 1.   My Representations.  I certify, represent to
>      Servicer and agree:
>
> A.  I am unable to afford my mortgage payments
> for  the  reasons  indicated  in  my  Hardship
> Affidavit and as a result, (i) I am either in
> default or believe I will be in default under
> the Loan Documents in the near future, and (ii)
> I do not have sufficient income or access to
> sufficient liquid assets to make the monthly
> mortgage payments now or in the near future;
> B.  I live in the Property as my principal
> residence,  and  the  Property  has  not  been
> condemned;
> C.  There has been no change in the ownership of
> the property since I signed the loan documents;
> D.  I am providing or already have provided
> documentation for all income that I receive (and
> I understand that I am not required to disclose
> any child support or alimony that I receive,
> unless I wish to have such income considered to
> qualify for the offer);
> E.  Under penalty of perjury, all documents and
> information I have provided to Servicer pursuant
> to this Plan, including the documents and
> information regarding my eligibility for the
> program are true and correct; and
> F.  If servicer requires me to obtain credit
> counseling, I will do so.

**29.** Plaintiff signed the Trial Modification Agreement and returned it to BANA in the manner and time required.

**30.** During all relevant times, Plaintiff's representations as made under Section 1 of the Trial Modification Agreement remained true.

**31.** Section two of the Trial Modification Agreement required Plaintiff to make three payments of $1,614.17 on or before February 1, March 1 and April 1, 2010.

**32.** Plaintiff Ms. Gordon duly made all three required payments.

   a. Plaintiff issued the check for the February 2010 payment on December 18, 2009 after speaking with the BANA employee representative. A copy of the check and date of deposit is hereto attached as **Exhibit 4**.

   b. Plaintiff issued the check for the March 2010 payment on February 24, 2010 on check number 319. A copy of the check and proof of deposit is hereto attached as **Exhibit 5**.

   c. Plaintiff issued the check for the April 2010 payment on or about March 23, 2010 on check number 330. A copy of the check and proof of deposit is hereto attached as **Exhibit 6**.

**33.** Plaintiff met all the conditions of the Trial Modification Agreement and her financial circumstances did not materially change during the period of the Trial Modification Agreement.

**34.**  Despite Plaintiff's full compliance with the terms of the Trial Period Plan, BOA did not provide Plaintiff a Permanent Modification Agreement as referenced in the Trial Modification Agreement.

**35.**  Plaintiff made additional payments for May, June, and July 2010, each in the amounts of $1,614.17.

**36.**  In total, Plaintiff paid BANA $15,597.22 in connection with the Trial Modification Agreement.

**37.**  Despite Plaintiff's complete compliance with the Trial Modification Agreement, BANA refused to provide Plaintiff a Permanent Modification Agreement.

**38.**  By letter dated June 3, 2010 BANA wrote to Plaintiff:

> We have reviewed your request for a loan modification under the federal government's Home Affordable Modification Program. Unfortunately, your loan is not eligible for a Home Affordable Modification for the reason stated below:
> ……
>
> **Excessive Forbearance.** Your loan is not eligible for a Home Affordable Modification because we are unable to create an affordable payment equal to 31% of your reported monthly gross income without changing the terms of your loan beyond the requirements of the program. In other words, to create an affordable payment for you, the investor (owner) of your loan would be required to delay collecting too large a portion of your principal balance until the loan pays off, beyond what the Home Affordable Modification Program allows.

**39.**  A copy of the June 3, 2010 letter is attached hereto as **Exhibit 7.**

8

**40.** "Excessive Forbearance" is not a basis for denying Plaintiff a Permanent Modification Agreement under the terms of the Trial Modification Agreement.

**41.** On May 19, 2014, BANA commenced debt collection foreclosure litigation under New Jersey docket F-019812-14. The litigation is ongoing at this time.

**42.** On or about April 1, 2015 servicing of the mortgage loan transferred from BANA to Seterus.

## COUNT I

BREACH OF CONTRACT

**43.** Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**44.** As agent and loan servicer for Fannie Mae, BANA offered Plaintiff a Trial Modification Agreement in December 2009.

**45.** The Trial Modification Agreement marked **Exhibit 3** to this Complaint is a contract.

**46.** Plaintiff relied upon the contract as drafted by BANA.

**47.** Plaintiff complied with all terms of the Trial Modification Agreement.

**48.** Plaintiff made each of the required payments under the Trial Modification Agreement.

**49.** Plaintiff's representations in Section 1 of the Trial Modification Agreement remained true in all material respects at all relevant times.

**50.** As consideration for the Trial Modification Agreement, Plaintiff paid BANA $15,597.22 between December 2009 and July 2010.

**51.** As consideration for the Trial Modification Agreement, Plaintiff provided BANA with all financial and personal documentation requested by the loan servicer.

**52.** Despite Plaintiff's performance on the contract, BANA refused to provide Plaintiff with a Permanent Modification Agreement.

**53.** Despite Plaintiff's performance on the contract, Fannie Mae refused to provide Plaintiff with a Permanent Modification Agreement.

**54.** BANA and Fannie Mae breached the terms of the Trial Modification Agreement by refusing to provide Plaintiff with a Home Affordable Modification Agreement as described in the Trial Modification Agreement.

**55.** Seterus is successor in interest to BANA in relation to all loan servicing matters including the Trial Modification Agreement. Seterus stands in place of BANA and was obligated to comply with the Trial Modification Agreement.

56.   Seterus obtained actual knowledge of the Trial Modification Agreement when it obtained the loan servicing file and accompanying documents from BANA.

57.   Since taking over servicing of the mortgage loan from BANA, Seterus has refused to provide Plaintiff a Permanent Modification Agreement.

58.   Seterus has breached the terms of the Trial Modification Agreement by refusing to provide Plaintiff with a Home Affordable Modification Agreement as described in the Trial Modification Agreement.

59.   The June 3, 2010 letter marked Exhibit 7 constitutes a breach of the Trial Modification Agreement.

60.   The June 3, 2010 letter states that Plaintiff is not being provided a Permanent Modification Agreement because of "Excessive Forbearance."

61.   The Trial Modification Agreement does not permit denial of a Permanent Modification Agreement due to "Excessive Forbearance."

62.   The Trial Modification Agreement states that so long as Plaintiff complies with the terms of the contract a Permanent Modification Agreement will be provided.

63.   Plaintiff complied with all terms of the Trial Modification Agreement and was entitled by contract to receive a Permanent Modification Agreement.

11

**64.** The conduct of each Defendant constitutes a breach of contract.

**65.** As a result of the Defendants' conduct Plaintiff has suffered damages.

**66.** Plaintiff's damages include payment of $15,597.22 pursuant to and as consideration for the Trial Modification Agreement, counsel fees, costs of suit, time lost from work and damage to Plaintiff's credit.

**67.** Plaintiff is entitled to recover of damages resulting from the wrongful conduct of each of the Defendants.


### COUNT II

VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT

(BANA, Fannie Mae)

**68.** Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**69.** Plaintiff is a "person" as defined N.J.S.A. 56:8-1(d).

**70.** Defendants are "persons" as defined by N.J.S.A. 56:8-1(d).

**71.** The Trial Modification Agreement constituted an extension of credit and is a transaction covered by the New Jersey Consumer Fraud Act.

**72.** In relation to its dealings with Plaintiff, BANA and Fannie Mae engaged in one or more unconscionable commercial practices as defined by N.J.S.A. §56:8-2.

**73.** The conduct in question was committed by BANA as agent for Fannie Mae and on information and belief, at the direction and/or instruction of Fannie Mae.

**74.** The acts of BANA and Fannie Mae prohibited by the New Jersey Consumer Fraud Act include but are not limited to the following:

    a.   BANA acting on behalf of Fannie Mae, induced Plaintiff to default on the mortgage loan by promising that a loan modification would be made available once the loan was three months late.

    b.   BANA and/or Fannie Mae deposited $15,597.22 of Plaintiff's money but failed to apply the funds properly to Plaintiff's account.

    c.   BANA and/or Fannie Mae induced Plaintiff to enter into a Trial Loan Modification Agreement contract and make payments on the loan modification contract which were not properly credited to the account.

    d.   BANA, acting on behalf of Fannie Mae, induced Plaintiff to make payments under the Trial loan Modification Agreement contract by falsely promising that upon completion the loan would be permanently modified.

**75.** Ms. Gordon reasonably relied upon the aforesaid concealment and/or omissions and/or misrepresentations of material fact to

her detriment and paid substantial sums of money under her reasonable reliance.

**76.** The aforesaid misrepresentations were material to the transaction at issue.

**77.** As a result of the unconscionable conduct by BANA and/or Fannie Mae, the Plaintiff has suffered injury including but not limited to monetary loss, damage to credit score, loss of equity in her home, and economic loss associated with counsel fees incurred defending a frivolous foreclosure lawsuit and efforts to collect money not owed by Plaintiff.

**78.** In light of the aforesaid, defendants violated N.J.S.A. 56:8-1, *et seq*.

**79.** Plaintiff seeks all relief afforded by the New Jersey Consumer Fraud Act including trebled damages, attorney fees and equitable relief as contemplated by the applicable statute.

## COUNT III

Violation of the Fair Debt Collection Practices Act

(Seterus)

**80.** Plaintiff reincorporates by reference all allegations set forth elsewhere in the complaint as if repeated herein.

**81.** Plaintiff is a consumer as that term is defined by 15 U.S.C. §1692a(3).

82.   The mortgage loan that is the subject of this litigation is a debt as that term is defined by 15 U.S.C. §1692a(5).

83.   Defendant Seterus is a debt collector as that term is defined by 15 U.S.C. §1692a(6).

84.   Seterus violated 15 U.S.C. §1692e by using false, deceptive and/or misleading representations or means in connection with the collection of a debt.

85.   Seterus sent a letter dated February 18, 2016 to Plaintiff, care of her attorneys.  A copy of the letter is hereto attached as **Exhibit 7**.

86.   The February 18 letter is a communication as that term is defined by 15 U.S.C. §1692a(2).

87.   The February 18 letter was sent to Plaintiff in connection with the collection of a debt.

88.   The February 18 letter provides a reinstatement figure and accounting of sums Seterus seeks to collect on the mortgage loan.

89.   The February 17 letter provides Plaintiff instructions on how to make payment on the mortgage loan.

90.   The February 17 letter includes a disclosure:"THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR.  WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."

**91.** Page 8 of the payoff statement includes a demand for Plaintiff to pay $390.00 for property inspections. Seterus demands that Plaintiff pay $15 for each of 26 separate property inspections that allegedly took place on April 9, 2015.

**92.** Seterus' claim that 26 property inspections took place on April 9 is false, deceptive and/or misleading.

**93.** Seterus' claim that 26 property inspections took place on April 9 and that Plaintiff must pay for the inspections is a false representation of the character, amount or legal status of the debt as prohibited by 15 U.S.C. §1692e(2).

**94.** Seterus' claim that 26 property inspections took place on April 9 and that Plaintiff must pay for the inspections a use of false representation or deceptive means to collect or attempt to collect a debt as prohibited by 15 U.S.C. §1692e(10).

**95.** On information and belief, the February 17 letter contains additional charges for fees not incurred by Seterus or the owner of the loan, Fannie Mae.

**96.** The wrongdoing identified in this Complaint is intended to place Defendants on notice of their actions and is not an exhaustive list of wrongdoing. It is anticipated that additional violations of the Fair Debt Collection Practices Act will be discovered during discovery.

**97.** As a result of the actions of Seterus, Plaintiff suffered damages.

16

**98.**  As  a  result  of  the  actions  of  Seterus,  Plaintiff  is entitled  to  all  relief  under  15  U.S.C.  §1692k  including  but  not limited  to  statutory  damages,  actual  damages,  attorney  fees  and costs  of  suit.

**WHEREFORE,**  PLAINTIFF  demands:

a.   Compensatory  Damages

b.   Punitive  Damages

c.   Statutory  Damages

d.   Restitution

e.   Injunctive  Relief

f.   Attorney  fees  and  costs

g.   All  other  relief  this  Court  determines  to  be  just  and fair.

### JURY TRIAL DEMAND

Plaintiff  hereby  demands  a  trial  by  jury  and  will  not  be satisfied  with  fewer  than  six  jury  members.

DENBEAUX & DENBEAUX
ATTORNEYS FOR PLAINTIFF

May 25, 2016                              Adam Deutsch, Esq.
                                         */s/ Adam Deutsch*
                                         DENBEAUX & DENBEAUX

                                         */S/ Nima Ashtyani*
                                         Nima Ashtyani, Esq.
                                         DENBEAUX & DENBEAUX

# Exhibit 1



Account:
Amount: 2,956.10
PostDate: 20091229
Tran_ID: 0
CheckNum:
DIN:
ReturnReasonDescription:
ECEItemSeqNum: 08192841445



Account: 6265019404
Amount: 2,956.10
PostDate: 20091229
Tran_ID: 0
CheckNum:
DIN:
ReturnReasonDescription:
ECEItemSeqNum: 08192841445

# Exhibit 2



**OFFICIAL CHECK**

**Bank**

50440032-0

BANKNORTH NA

DATE: 12/21/2009

52-0133
112

BAC HOME LOAN SERVICE LP

$2,956.10

Two Thousand Nine Hundred Fifty Six AND 10/100

DRAWER: TD BANK, N.A.

AUTHORIZED SIGNATURE



**Bank**

America's Most Convenient Bank®

**OFFICIAL CHECK** 50440032-0

**Bank**

TD BANKNORTH NA

DATE 12/21/2009

PAY TO THE
ORDER OF BAC HOME LOAN SERVICE LP $2,956.10

Two Thousand Nine Hundred Fifty Six AND 10/100

DRAWER. TD BANK, NA

AUTHORIZED SIGNATURE



# Exhibit 3

 

Investor Loan # ████████

# HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN Part 1
## (Customer Copy)

Trial Period Plan Effective Date: 2/1/2010
Borrower ("I")[1]: LAURI GORDON
Servicer ("Servicer"): BAC Home Loans Servicing, LP
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 2/02/2007
Loan Number: ████████
Property Address ("Property"): 278 MORSE AVENUE, WYCKOFF, NJ 07481

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1.  **My Representations.** I certify, represent to Servicer and agree:

    A.   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.   I live in the Property as my principal residence, and the Property has not been condemned;

    C.   There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.   I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 3/09) (page 1 of 3 pages)

 



E. Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

F. If Servicer requires me to obtain credit counseling, I will do so.

2. **The Trial Period Plan.** On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,614.17.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,614.17 | 2/1/2010 |
| 2 | $1,614.17 | 3/1/2010 |
| 3 | $1,614.17 | 4/1/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Plan;

B. Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C. If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D. The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F. If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) (page 2 of 3 pages)






Bank of America Home Loans

G.   I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3.   **The Modification.**  I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges associated with overdue loan payments remaining unpaid as of the date immediately before the modification. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4.   **Additional Agreements.**  I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.   To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C.   That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

D.   That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.   Notwithstanding anything herein to the contrary, if my final two Trial Period Payments are received by Servicer after the close of business on the 15th calendar day of the last month of the Trial Period but before the end of the Trial Period, I agree that the Trial Period shall be extended by one calendar month (the "Additional Trial Period"). I agree to abide by all terms and provisions of this Trial Period Plan during the Additional Trial Period. In addition, I agree to make a Trial Period Payment in the amount of $1,614.17 [the same amount of the other Trial Period Payments] no more than 30 days after the last due date listed in the chart in Section 2 above.

The Servicer and I have executed this Plan.

BAC Home Loans Servicing, LP

LAURI GORDON

12/28/09

By: _____                                   Date

Date _____

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) (page 3 of 3 pages)




   Bank of America ⟪⟫ Home Loans

Investor Loan # ▇▇▇▇▇▇▇

# HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN
## (Mortgage Servicer Copy 1)

Trial Period Plan Effective Date: 2/1/2010

Borrower ("I")[1]: LAURI GORDON

Servicer ("Servicer"): BAC Home Loans Servicing, LP

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 2/02/2007

Loan Number: ▇▇▇▇▇▇▇

Property Address ("Property"): 278 MORSE AVENUE, WYCKOFF, NJ 07481

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1.    **My Representations.** I certify, represent to Servicer and agree:

   A.    I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.    I live in the Property as my principal residence, and the Property has not been condemned;

   C.    There has been no change in the ownership of the Property since I signed the Loan Documents;

   D.    I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156  3/09 (rev. 8/09) (page 1 of 3 pages)







E.   Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

F.   If Servicer requires me to obtain credit counseling, I will do so.

2.   **The Trial Period Plan.**  On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,614.17.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,614.17 | 2/1/2010 |
| 2 | $1,614.17 | 3/1/2010 |
| 3 | $1,614.17 | 4/1/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A.   TIME IS OF THE ESSENCE under this Plan;

B.   Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C.   If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D.   The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E.   When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F.   If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                                    Form 3156   3/09 (rev. 8/09) (page 2 of 3 pages)






G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3. **The Modification.** I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges associated with overdue loan payments remaining unpaid as of the date immediately before the modification. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B. To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C. That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

D. That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E. Notwithstanding anything herein to the contrary, if my final two Trial Period Payments are received by Servicer after the close of business on the 15th calendar day of the last month of the Trial Period but before the end of the Trial Period, I agree that the Trial Period shall be extended by one calendar month (the "Additional Trial Period"). I agree to abide by all terms and provisions of this Trial Period Plan during the Additional Trial Period. In addition, I agree to make a Trial Period Payment in the amount of $1,614.17 [the same amount of the other Trial Period Payments] no more than 30 days after the last due date listed in the chart in Section 2 above.

The Servicer and I have executed this Plan.

_____          _Lauri Gordon_ (signature)
BAC Home Loans Servicing, LP                 LAURI GORDON
                                             12/28/09
                                             Date

By: _____

_____
Date

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                   Form 3156  3/09 (rev. 8/09) (page 3 of 3 pages)






Bank of America Home Loans

Investor Loan # _____

# HOME AFFORDABLE MODIFICATION PROGRAM TRIAL PERIOD PLAN Part 1
## (Mortgage Servicer Copy 2)

Trial Period Plan Effective Date: 2/1/2010
Borrower ("I"): LAURI GORDON
Servicer ("Servicer"): BAC Home Loans Servicing, LP
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 2/02/2007
Loan Number: _____
Property Address ("Property"): 278 MORSE AVENUE, WYCKOFF, NJ 07481

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.

1. **My Representations.** I certify, represent to Servicer and agree:

    A. I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. I live in the Property as my principal residence, and the Property has not been condemned;

    C. There has been no change in the ownership of the Property since I signed the Loan Documents;

    D. I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                    Form 3156   3/89 (rev. 8/09) (page 1 of 3 pages)





 

**E.** Under penalty of perjury, all documents and information I have provided to Servicer pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

**F.** If Servicer requires me to obtain credit counseling, I will do so.

2. **The Trial Period Plan.** On or before each of the following due dates, I will pay the Servicer the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,614.17.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,614.17 | 2/1/2010 |
| 2 | $1,614.17 | 3/1/2010 |
| 3 | $1,614.17 | 4/1/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

**A.** TIME IS OF THE ESSENCE under this Plan;

**B.** Except as set forth in Section 2.C. below, the Servicer will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

**C.** If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Servicer may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

**D.** The Servicer will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. If there is any remaining money after such payment is applied, such remaining funds will be held by the Servicer and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

**E.** When the Servicer accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

**F.** If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) (page 2 of 3 pages)

 




G.  I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

3.  **The Modification.** I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges associated with overdue loan payments remaining unpaid as of the date immediately before the modification. Upon execution of a Modification Agreement by the Servicer and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Servicer and me for the remaining term of the loan.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.  To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

C.  That this Plan constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

D.  That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Servicer and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.  Notwithstanding anything herein to the contrary, if my final two Trial Period Payments are received by Servicer after the close of business on the 15th calendar day of the last month of the Trial Period but before the end of the Trial Period, I agree that the Trial Period shall be extended by one calendar month (the "Additional Trial Period"). I agree to abide by all terms and provisions of this Trial Period Plan during the Additional Trial Period. In addition, I agree to make a Trial Period Payment in the amount of $1,614.17 [the same amount of the other Trial Period Payments] no more than 30 days after the last due date listed in the chart in Section 2 above.

The Servicer and I have executed this Plan.

_____

BAC Home Loans Servicing, LP



LAURI GORDON

12/28/09

Date

By:  _____

_____

Date

**HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3156   3/09 (rev. 8/09)(page 3 of 3 pages)



# Exhibit 4

# Bank
### America's Most Convenient Bank®

STATEMENT OF ACCOUNT

LAURI GORDON

Page:                          5 of  6
Statement Period: Dec 12 2009-Jan 11 2010
Cust Ref #:
Primary Account #:



#272      12/21    $20.00

#275      1/07    $80.25

EPW                                    277
LAURI R. GORDON          TD BANK, NA          Date  December 18, 2009
                         6000 ATRIUM WAY
278 MORSE AVE            MT. LAUREL, NJ 08054-0000
Wyckoff, NJ 07481        DO NOT RETURN        $      1,614.17
Pay to the  Bank of America Home Loan      TO REMITER
Order of
2233-2345   **One Thousand Six Hundred Fourteen and 17/100 DOLLARS***********   DOLLARS

                                              148073474
                                Verbally Authorized By Your Depositor

#277      12/29    $1,614.17

V1.8.4js-1/47436

138544 06DD1708 029008

# Exhibit 5

LAURI GORDON

Page:
Statement Period: Feb 12 2010-Mar 11 2010
Cust Ref #:
Primary Account #:



LAURI GORDON
279 Morse Ave
Wyckoff, NJ 07481

Pay to the
Order of    Bank of America Home Loan

TD Bank, NA
ONE ATRIUM WAY
MT LAUREL, NJ 08054-0000

EPW                    319
Date  February 24, 2010

DO NOT RETURN
TO REMITTER

$    1,614.17

***One Thousand Six Hundred Fourteen and 17/100 DOLLARS***                    DOLLARS

146673474

Verbally Authorized By Your Depositor

#319        3/02        $1,614.17

#320        3/08        $130.09

322

#324        3/09        $32.78

#325        3/05        $283.11

LAURI GORDON



## ACCOUNT ACTIVITY

### Transactions by Date (continued)

| DATE | DESCRIPTION | DEBIT | CREDIT | BALANCE |
|---|---|---|---|---|
| 2/22 | | | | |
| 2/22 | | | | |
| 2/22 | | | | |
| 2/22 | | | | |
| 2/23 | | | | |
| 2/23 | | | | |
| 2/23 | | | | |
| 2/24 | | | | |
| 2/24 | | | | |
| 2/24 | | | | |
| 2/24 | | | | |
| 2/24 | | | | |
| 2/24 | | | | |
| 2/25 | | | | |
| 3/1 | | | | |
| 3/1 | | | | |
| 3/2 | Check #319 | 1,614.17 | | 669.82 |
| 3/2 | | | | |
| 3/2 | | | | |
| 3/4 | | | | |
| 3/4 | | | | |

Call 1-800-YES-2000 for 24-hour Direct Banking service

# Exhibit 6

LAURI GORDON

Case 2:16-cv-03093-WJM-SCM   Document 1   Filed 05/31/16   Page 39 of 52 PageID: 39

Page:                              6 of   7
Statement Period: Mar 12 2010-Apr 11 2010
Cust Ref #:
Primary Account #:



#329    3/17    $41.00

## ACCOUNT ACTIVITY

### Transactions by Date (continued)

| DATE | DESCRIPTION | DEBIT | CREDIT | BALANCE |
|------|-------------|-------|--------|---------|
| 3/22 | | | | |
| 3/22 | | | | |
| 3/22 | | | | |
| 3/22 | | | | |
| 3/25 | | | | |
| 3/26 | | | | |
| 3/26 | | | | |
| 3/29 | | | | 595.83 |
| 3/30 | Check #330 | 1,614.17 | | |
| 3/31 | | | | 1,095.83 |
| 3/31 | | | | |
| 3/31 | | | | |
| 4/2 | | | | |
| 4/5 | | | | |
| 4/5 | | | | |
| 4/5 | | | | |
| 4/5 | | | | |
| 4/5 | | | | |



Call 1-800-YES-2000 for 24-hour Direct Banking service

BANK DEPOSITS FDIC INSURED          WWW.TDBANK.COM

# Exhibit 7

4500 Amon Carter Blvd
Fort Worth, TX 76155

June 03, 2010

Lauri Gordon

278 MORSE AVENUE
WYCKOFF, NJ 07481

Loan Number: [redacted]

Dear Lauri Gordon :

We have reviewed your request for a loan modification under the federal government's Home Affordable Modification Program. Unfortunately, your loan is not eligible for a Home Affordable Modification for the reason stated below.

We are currently reviewing your financial information to determine if there are other options available to you. These options may include:

- A different modification program that may help you achieve more affordable payments;
- A forbearance program, which would offer you lower payments or no payments for a limited number of months to either give you time to resolve your financial difficulties or give us time to work together with you on a more permanent solution;
- A short sale, in which you would agree to sell your home and the proceeds of the sale would be applied to your loan balance, even if it is not enough to pay off the loan in full; or
- A deed in lieu of foreclosure, in which you would transfer the deed to your home to us in full payment of the outstanding balance on your mortgage.

Once we have finished reviewing your information, we will contact you within 10 days to let you know what other options are available to you and the next steps you need to take. Please contact us at 1.888.325.5399 if you have questions about these options.

Under the guidelines of the Home Affordable Modification Program:

**Excessive Forbearance.** Your loan is not eligible for a Home Affordable Modification because we are unable to create an affordable payment equal to 31% of your reported monthly gross income without changing the terms of your loan beyond the requirements of the program. In other words, to create an affordable payment for you, the investor (owner) of your loan would be required to delay collecting too large a portion of your principal balance until the loan pays off, beyond what the Home Affordable Modification Program allows.

We strongly encourage you to continue making the normal monthly payments required under your original loan documents to help avoid foreclosure. Unfortunately, there is no guarantee that making your payments will help you qualify for a program that may resolve your situation, but not making any payments will increase your chance of foreclosure. We want to help you avoid that possibility.

**Important information about foreclosure proceedings**

If a foreclosure proceeding or foreclosure sale of your home is currently pending and on hold, that hold will continue and remain in effect while you are considered for other home retention programs.

**We're here to help you**

**Please call us today at 1.888.325.5399 if you believe your loan should be eligible for the Home Affordable Modification Program or if you have any questions.** We will call you in 10 days to let you know what other options are available to you and the next steps you need to take.

You can also seek assistance at no charge from U.S. Department of Housing and Urban Development-approved housing counselors by calling the HOPE Hotline Number (1.888.995.HOPE). Assistance in understanding this notice is available through the HOPE Hotline by asking for MHA HELP.

BAC Home Loans Servicing, LP

# Exhibit 8

# seterus™

**Physical Address**
14523 SW Millikan Way; Suite 200; Beaverton, OR 97005

**Business Hours (Pacific Time)**
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

**Payments**
PO Box 11790; Newark, NJ 07101-4790

**Correspondence**
PO Box 1077; Hartford, CT 06143-1077

**Phone**
866.570.5277

**Fax**
866.578.5277

**Website**
www.seterus.com

February 18, 2016

COPY

*L197L*

GORDON, LAURI R
c/o NINA ASHTYANI, DENBEAUX AND DENBEAUX
366 KINDERKERMACK RD
WESTWOOD, NJ 07675

RE: Loan No.:

Property Address:      278 MORSE AVE
                       WYCKOFF, NJ 07481-1950

Seterus, Inc. is the servicer of the above-referenced loan. We are responding to your request for the amount required to reinstate the above-referenced loan to a current status. This amount is subject to all of the conditions in this letter.

The amount required to reinstate your loan is as follows:

• The reinstatement amount if received between 2/18/2016 and 3/18/2016 is $221,906.10

This statement is good through 3/18/2016 as shown above.

## Conditions

1. Issuance of this statement does not suspend the requirement for you to make loan payments when due. A late charge of $112.42 may be assessed in accordance with the terms of your loan agreement if the reinstatement funds are not received prior to the expiration of your grace period.

2. If any charges are posted to the account after the date of this letter, you also may be required to pay those charges. If you would like an updated reinstatement amount in writing, please contact us. We do not provide verbal updates.

3. Payment must be made with certified funds, bank check, money order or wire transfer. Payment instructions are located below.

The owner of your loan reserves all of its rights under the loan documents and available under the law and nothing in this letter shall waive its rights to pursue collection of the amounts owing under the loan.

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY**: 1411669, 1411665, 1411662. **TENNESSEE**: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

GORDON, LAURI R
Loan No.: ████████
Page 2
February 18, 2016

If you receive or have received a discharge of this debt in a bankruptcy proceeding and the debt is not reaffirmed in the bankruptcy proceeding, you will not be personally responsible for the debt. However, the lien against the property securing this debt may remain on the property until the amount owing on the loan is paid.

If you have any questions, please contact us at our toll-free number above.

## PAYMENT INSTRUCTIONS

Wiring Instructions
JP Morgan Chase Bank, Tampa, Florida
ABA: 0210-0002-1
Account: ████████
Credit to: Seterus, Inc.
Indicate Loan Number: ████████
Indicate Borrower Name: GORDON, LAURI R

Overnight Address
Seterus, Inc.
Transaction Processing Department
14523 SW Millikan Way, Suite 200
Beaverton, OR 97005
Indicate Loan Number: ████████
Indicate Borrower Name: GORDON, LAURI R

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

GORDON, LAURI R
Loan No.: █████████
Page 3
February 18, 2016

### REINSTATEMENT AMOUNT

| | |
|---|---|
| **Reinstatement Good Through:** | **March 18, 2016** |
| **Unpaid Principal Balance:** | **$359,462.00** |
| **Next Due Date:** | **April 01, 2016** |

**Principal and Interest Payments**

| Due Date | Amount |
|---|---|
| 03/01/2010 | $ 2,248.31 |
| 04/01/2010 | 2,248.31 |
| 05/01/2010 | 2,248.31 |
| 06/01/2010 | 2,248.31 |
| 07/01/2010 | 2,248.31 |
| 08/01/2010 | 2,248.31 |
| 09/01/2010 | 2,248.31 |
| 10/01/2010 | 2,248.31 |
| 11/01/2010 | 2,248.31 |
| 12/01/2010 | 2,248.31 |
| 01/01/2011 | 2,248.31 |
| 02/01/2011 | 2,248.31 |
| 03/01/2011 | 2,248.31 |
| 04/01/2011 | 2,248.31 |
| 05/01/2011 | 2,248.31 |
| 06/01/2011 | 2,248.31 |
| 07/01/2011 | 2,248.31 |
| 08/01/2011 | 2,248.31 |
| 09/01/2011 | 2,248.31 |
| 10/01/2011 | 2,248.31 |
| 11/01/2011 | 2,248.31 |
| 12/01/2011 | 2,248.31 |
| 01/01/2012 | 2,248.31 |
| 02/01/2012 | 2,248.31 |

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

GORDON, LAURI R
Loan No.:
Page 4
February 18, 2016

| | |
|---|---|
| 03/01/2012 | 2,248.31 |
| 04/01/2012 | 2,248.31 |
| 05/01/2012 | 2,248.31 |
| 06/01/2012 | 2,248.31 |
| 07/01/2012 | 2,248.31 |
| 08/01/2012 | 2,248.31 |
| 09/01/2012 | 2,248.31 |
| 10/01/2012 | 2,248.31 |
| 11/01/2012 | 2,248.31 |
| 12/01/2012 | 2,248.31 |
| 01/01/2013 | 2,248.31 |
| 02/01/2013 | 2,248.31 |
| 03/01/2013 | 2,248.31 |
| 04/01/2013 | 2,248.31 |
| 05/01/2013 | 2,248.31 |
| 06/01/2013 | 2,248.31 |
| 07/01/2013 | 2,248.31 |
| 08/01/2013 | 2,248.31 |
| 09/01/2013 | 2,248.31 |
| 10/01/2013 | 2,248.31 |
| 11/01/2013 | 2,248.31 |
| 12/01/2013 | 2,248.31 |
| 01/01/2014 | 2,248.31 |
| 02/01/2014 | 2,248.31 |
| 03/01/2014 | 2,248.31 |
| 04/01/2014 | 2,248.31 |
| 05/01/2014 | 2,248.31 |
| 06/01/2014 | 2,248.31 |
| 07/01/2014 | 2,248.31 |
| 08/01/2014 | 2,248.31 |
| 09/01/2014 | 2,248.31 |
| 10/01/2014 | 2,248.31 |
| 11/01/2014 | 2,248.31 |
| 12/01/2014 | 2,248.31 |
| 01/01/2015 | 2,248.31 |
| 02/01/2015 | 2,248.31 |
| 03/01/2015 | 2,248.31 |

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

GORDON, LAURI R
Loan No.: ▓▓▓▓▓▓▓▓
Page 5
February 18, 2016

| | |
|---|---|
| 04/01/2015 | 2,248.31 |
| 05/01/2015 | 2,248.31 |
| 06/01/2015 | 2,248.31 |
| 07/01/2015 | 2,248.31 |
| 08/01/2015 | 2,248.31 |
| 09/01/2015 | 2,248.31 |
| 10/01/2015 | 2,248.31 |
| 11/01/2015 | 2,248.31 |
| 12/01/2015 | 2,248.31 |
| 01/01/2016 | 2,248.31 |
| 02/01/2016 | 2,248.31 |
| 03/01/2016 | 2,248.31 |
| **Summary** | **$164,126.63** |

**Tax and Insurance Payments**

| Due Date | Amount |
|---|---|
| 03/01/2010 | $ 775.58 |
| 04/01/2010 | 775.58 |
| 05/01/2010 | 775.58 |
| 06/01/2010 | 775.58 |
| 07/01/2010 | 775.58 |
| 08/01/2010 | 775.58 |
| 09/01/2010 | 775.58 |
| 10/01/2010 | 775.58 |
| 11/01/2010 | 775.58 |
| 12/01/2010 | 775.58 |
| 01/01/2011 | 775.58 |
| 02/01/2011 | 775.58 |
| 03/01/2011 | 775.58 |
| 04/01/2011 | 775.58 |
| 05/01/2011 | 775.58 |
| 06/01/2011 | 775.58 |
| 07/01/2011 | 775.58 |
| 08/01/2011 | 775.58 |
| 09/01/2011 | 775.58 |
| 10/01/2011 | 775.58 |

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

GORDON, LAURI R
Loan No.: ▮▮▮▮▮▮▮
Page 6
February 18, 2016

| | |
|---|---|
| 11/01/2011 | 775.58 |
| 12/01/2011 | 775.58 |
| 01/01/2012 | 775.58 |
| 02/01/2012 | 775.58 |
| 03/01/2012 | 775.58 |
| 04/01/2012 | 775.58 |
| 05/01/2012 | 775.58 |
| 06/01/2012 | 775.58 |
| 07/01/2012 | 775.58 |
| 08/01/2012 | 775.58 |
| 09/01/2012 | 775.58 |
| 10/01/2012 | 775.58 |
| 11/01/2012 | 775.58 |
| 12/01/2012 | 775.58 |
| 01/01/2013 | 775.58 |
| 02/01/2013 | 775.58 |
| 03/01/2013 | 775.58 |
| 04/01/2013 | 775.58 |
| 05/01/2013 | 775.58 |
| 06/01/2013 | 775.58 |
| 07/01/2013 | 775.58 |
| 08/01/2013 | 775.58 |
| 09/01/2013 | 775.58 |
| 10/01/2013 | 775.58 |
| 11/01/2013 | 775.58 |
| 12/01/2013 | 775.58 |
| 01/01/2014 | 775.58 |
| 02/01/2014 | 775.58 |
| 03/01/2014 | 775.58 |
| 04/01/2014 | 775.58 |
| 05/01/2014 | 775.58 |
| 06/01/2014 | 775.58 |
| 07/01/2014 | 775.58 |
| 08/01/2014 | 775.58 |
| 09/01/2014 | 775.58 |
| 10/01/2014 | 775.58 |
| 11/01/2014 | 775.58 |

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

GORDON, LAURI R
Loan No.:
Page 7
February 18, 2016

| | | |
|---|---|---:|
| 12/01/2014 | | 775.58 |
| 01/01/2015 | | 775.58 |
| 02/01/2015 | | 775.58 |
| 03/01/2015 | | 775.58 |
| 04/01/2015 | | 775.58 |
| 05/01/2015 | | 775.58 |
| 06/01/2015 | | 775.58 |
| 07/01/2015 | | 679.58 |
| 08/01/2015 | | 679.58 |
| 09/01/2015 | | 679.58 |
| 10/01/2015 | | 679.58 |
| 11/01/2015 | | 679.58 |
| 12/01/2015 | | 679.58 |
| 01/01/2016 | | 679.58 |
| 02/01/2016 | | 679.58 |
| 03/01/2016 | | 679.58 |
| **Summary** | | **$55,753.34** |

**Actual Charges Through  3/18/2016**

| Due Date | Description | Amount |
|---|---|---:|
| **PROP INSPECTION** | | |
| 04/23/2015 | PROP INSPECTION | $ 15.00 |
| 05/27/2015 | PROP INSPECTION | 15.00 |
| 06/24/2015 | PROP INSPECTION | 15.00 |
| 07/30/2015 | PROP INSPECTION | 15.00 |
| 08/27/2015 | PROP INSPECTION | 15.00 |
| 09/23/2015 | PROP INSPECTION | 15.00 |
| 10/21/2015 | PROP INSPECTION | 15.00 |
| 11/24/2015 | PROP INSPECTION | 15.00 |
| 12/23/2015 | PROP INSPECTION | 15.00 |
| 01/27/2016 | PROP INSPECTION | 15.00 |
| **Summary** | | **$150.00** |
| **PSLGLPOSTINGCOST** | | |
| 04/09/2015 | PSLGLPOSTINGCOST | $ 50.00 |
| 04/09/2015 | PSLGLPOSTINGCOST | 200.00 |
| 04/09/2015 | PSLGLPOSTINGCOST | 110.00 |

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

GORDON, LAURI R
Loan No.: 
Page 8
February 18, 2016

| | | |
|---|---|---|
| **Summary** | | **$360.00** |
| **PSPROPINSPECTION** | | |
| 04/09/2015 | PSPROPINSPECTION | $ 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| 04/09/2015 | PSPROPINSPECTION | 15.00 |
| **Summary** | | **$390.00** |
| **PSPUBLICTNNOTICE** | | |
| 04/09/2015 | PSPUBLICTNNOTICE | $ 64.96 |
| **Summary** | | **$64.96** |
| **PSRECRDNOTCDEFLT** | | |
| 04/09/2015 | PSRECRDNOTCDEFLT | $ 40.00 |
| **Summary** | | **$40.00** |

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

GORDON, LAURI R
Loan No.:
Page 9
February 18, 2016

**PSRECSUBSTRUSTEE**

| | | |
|---|---|---|
| 04/09/2015 | PSRECSUBSTRUSTEE | $ 423.75 |
| 04/09/2015 | PSRECSUBSTRUSTEE | 485.00 |
| **Summary** | | **$908.75** |

**Estimated Charges Through 3/18/2016**

| Due Date | Description | Amount |
|---|---|---|

**FORECASTED LATE CHARGE**

| | | |
|---|---|---|
| 03/01/2016 | FORECASTED LATE CHARGE | $ 112.42 |
| **Summary** | | **$112.42** |
| **Summary** | **Estimated Charges Subtotal** | **$112.42** |

| | |
|---|---|
| **SUBTOTAL** | **221,906.10** |

| | |
|---|---|
| Less Suspense Funds: | $0.00 |
| Less Pending Expense Credit: | $0.00 |
| **TOTAL DUE IF PAID BY 3/18/2016** | **$221,906.10** |

Sincerely,

Seterus, Inc.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. **COLORADO**: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.